No. 18-152

IN THE
# United States Court of Appeals for the Federal Circuit

IN RE GOOGLE LLC,
*Petitioner.*

On Petition for a Writ of Mandamus to the United States District Court for the Eastern District of Texas
No. 2:17-cv-00442, Hon. Rodney Gilstrap

**BRIEF OF ETSY, HP, NETFLIX, RINGCENTRAL, RED HAT, SALESFORCE, SAP AMERICA, TWITTER, AND THE HIGH TECH INVENTORS ALLIANCE AS AMICI CURIAE IN SUPPORT OF PETITIONER**

Mark S. Davies
Eric A. Shumsky
Robbie Manhas
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

Clement Roberts
Cynthia B. Stein
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
(415) 773-5700

*Counsel for Amici Curiae*

**FORM 9. Certificate of Interest** **Form 9 Rev. 10/17**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

In re Google LLC v. ____________

Case No. 18-152

**CERTIFICATE OF INTEREST**

Counsel for the:
☐ (petitioner) ☐ (appellant) ☐ (respondent) ☐ (appellee) ■ (amicus) ☐ (name of party)

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| Etsy, Inc. | N/A | None |
| Netflix, Inc. | N/A | None |
| RingCentral, Inc. | N/A | None |
| Red Hat, Inc. | N/A | No parent corporation. Publicly held companies that own 10% or more of its stock are The Vanguard Group, Inc. and T. Rowe Price Associates, Inc. |
| salesforce.com, inc. | N/A | None |
| HP Inc. | N/A | None |
| SAP America, Inc. | N/A | SAP America, Inc. is a wholly owned subsidiary of SAP SE. No other company owns 10% or more or more of stock in SAP SE. |
| High Tech Inventors Alliance | N/A | No parent corporation and no company owns 10% or more of its stock. HTIA's members are as follows: Adobe Systems, Inc.; Amazon.com, Inc.; Cisco Systems, Inc.; Dell Inc.; Google Inc.; Intel Corporation; Oracle Corporation; and salesforce.com, inc. |
| Twitter, Inc. | N/A | None |

**FORM 9. Certificate of Interest** **Form 9**
**Rev. 10/17**

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court **(and who have not or will not enter an appearance in this case)** are:

N/A

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b). (The parties should attach continuation pages as necessary).

N/A

August 27, 2018
Date

/s/ *Clement Roberts*
Signature of counsel

Please Note: All questions must be answered

Clement Roberts
Printed name of counsel

cc: Counsel of record

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... iv
STATEMENT OF INTEREST .......... 1
INTRODUCTION .......... 2
ARGUMENT .......... 4
I. A Thing Isn't A Place. .......... 4
II. The Uncertainty Caused By The District Court's Decision Is An Especially Strong Justification For Mandamus. .......... 10
CONCLUSION .......... 16
CERTIFICATE OF SERVICE
CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re BigCommerce, Inc.*,
890 F.3d 978 (Fed. Cir. 2018) .......... 2, 3, 6, 11, 12

*Chandris, Inc. v. Latsis*,
515 U.S. 347 (1995) .......... 10

*Cheney v. U.S. Dist. Court for D.C.*,
542 U.S. 367 (2004) .......... 12

*In re Cordis Corp.*,
769 F.2d 733 (Fed. Cir. 1985) .......... 9

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017) .......... 3, 6, 8, 9, 12, 13, 15

*Dep't of Homeland Sec. v. MacLean*,
135 S. Ct. 913 (2015) .......... 7

*Fourco Glass Co. v. Transmirra Prods. Corp.*,
353 U.S. 222 (1957) .......... 8

*La Buy v. Howes Leather Co.*,
352 U.S. 249 (1957) .......... 10

*In re Micron Tech., Inc.*,
875 F.3d 1091 (Fed. Cir. 2017) .......... 10, 11, 12, 13

*Olberding v. Ill. Cent. R.R. Co.*,
346 U.S. 338 (1953) .......... 2

*Personal Audio, LLC v. Google, Inc.*,
280 F. Supp. 3d 922 (E.D. Tex. 2017) .......... 12, 13, 14

*Power Paragon, Inc. v. Precision Tech. USA, Inc.*,
605 F. Supp. 2d 722 (E.D. Va. 2008) .......... 8

*Rimkus Consulting Grp., Inc. v. Balentine*,
693 F. Supp. 2d 681 (S.D. Tex. 2010) .................................................. 8

*In re Roche Molecular Sys., Inc.*,
516 F.3d 1003 (Fed. Cir. 2008) .......................................................... 10

*SAS Inst., Inc. v. Iancu*,
138 S. Ct. 1348 (2018) .......................................................................... 15

*Schlagenhauf v. Holder*,
379 U.S. 104 (1964) .............................................................................. 11

*Schnell v. Peter Eckrich & Sons, Inc.*,
365 U.S. 260 (1961) ............................................................................ 2, 8

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
137 S. Ct. 1514 (2017) ........................................................................ 2, 8

*United States v. Sisson*,
399 U.S. 267 (1970) .............................................................................. 11

*In re ZTE (USA) Inc.*,
890 F.3d 1008 (Fed. Cir. 2018) ...................................................... 12, 13

**Statutes and Rules**

28 U.S.C. § 1391(b) ................................................................................ 8

28 U.S.C. § 1391(b)(2) ............................................................................. 7

28 U.S.C. § 1400(b) ..................................................................... 2, 6, 8, 9, 12

Fed. R. App. P. 29(a)(4)(E) ........................................................................ 1

**Other Authorities**

Black's Law Dictionary (1st ed. 1891) ................................................... 15

Black's Law Dictionary (6th ed. 1990) ..................................................... 7

William Dwight Whitney, The Century Dictionary (Benjamin E.
Smith ed., 1911) .............................................................................. 6, 7, 15

## STATEMENT OF INTEREST

Amici and their members are among the world's leading technology companies. People around the world rely on amici's streaming services, cloud storage, cloud computing, e-commerce platforms, and internet infrastructure for their businesses and personal lives. Amicus High Tech Inventors Alliance is an organization of major technology companies (Adobe, Amazon.com, Cisco, Dell, Google, Intel, Oracle, and Salesforce) that promotes investment in new technologies through the advancement of a fair and efficient patent litigation system.[1]

Amici have diverse business and policy interests—indeed, some of them are competitors. But all have the same interest in predictable and sensible venue rules that comport with the venue statute Congress enacted. Rules like the one the district court adopted here undermine that interest by subjecting companies to uncertainty and to the high

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), amici state that no party's counsel authored this brief in whole or in part. Although Google, Inc. is a member of High Tech Inventors Alliance, no party, party's counsel, or any person other than amici or their counsel contributed money intended to fund preparing or submitting this brief. All parties have consented to the filing of this brief.

cost of litigating in venues where they have no "place of business" under any ordinary meaning of that term.

## INTRODUCTION

For more than half a century, the Supreme Court has made clear that venue "is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961) (*quoting Olberding v. Ill. Cent. R.R. Co.*, 346 U.S. 338, 340 (1953)); *accord In re BigCommerce, Inc.*, 890 F.3d 978, 985 (Fed. Cir. 2018). The words of the statute matter, and they may not be twisted to reach preferred outcomes.

Prior to the Supreme Court's venue decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017), patent cases were heavily concentrated in a few judicial districts. In response to *TC Heartland*, which interpreted the first phrase of 28 U.S.C. § 1400(b), enterprising plaintiffs have urged (and some district courts have adopted) expansive readings of the *second* half of § 1400(b) in an effort to achieve the same result. That provision allows patent cases to be brought "where the defendant has committed acts of infringement and

has a regular and established place of business." As a result, in *Cray,* this Court intervened to strike down an expansive interpretation of the statute (which would have extended venue to virtually all home offices) as "not sufficiently tethered to this statutory language." *In re Cray Inc.,* 871 F.3d 1355, 1362 (Fed. Cir. 2017) (issuing a writ of mandamus and compelling transfer in *Raytheon Co. v. Cray, Inc.*, No. 2:15-cv-01554-JRG (E.D. Tex.)). And in *BigCommerce*, the Court granted mandamus to reject a statutory interpretation that would have expanded the venue statute by restricting *TC Heartland* to states with only one judicial district. 890 F.3d at 985-86.

The decision here deserves the same treatment. The right to a writ is clear because the decision strays far from the statutory text, conflicts with this Court's prior decisions, and would dramatically expand the patent-venue statute. In particular, the district court concluded for the first time that a *thing* (a computer server) constitutes a "place" within the meaning of the statute because the server was "occupying a physical space." Appx21. This atextual redefinition of the statutory language is of special importance to amici because, as internet companies, they *must* deploy equipment across a wide geographic area

in order to obtain satisfactory responsiveness over the internet. What's more, the district court's approach would unreasonably multiply the number of places where any company—whether it provides manufacturing, logistics, or services—that maintains geographically dispersed equipment or inventory could be sued for infringement.

Mandamus review is especially appropriate here to provide guidance because courts even within the Eastern District of Texas are divided. The decision at issue here directly conflicts with another decision *on the same facts* in the same venue. It is untenable to have a situation where the outcome of the venue analysis (especially in one of the busiest patent dockets in the country) depends on which judge hears the case. Amici urge the Court to grant mandamus to restore the venue provision to its plain, statutory meaning.

## ARGUMENT

### I. A Thing Isn't A Place.

The district court's decision rests on the notion that a thing (here, a computer server) occupies space and is therefore a "place"—a premise from which the court reasoned that a thing also can be a place of business within the meaning of the patent-venue statute. To say this is

to refute it. Merely because an object occupies space in the real word doesn't mean that it is a place. That a computer on which this brief was drafted is located in Washington, D.C. (surely a place) doesn't mean the computer itself, or the modest space it occupies, is a "place." No one would speak about it in those terms. And the consequences of such a ruling would be extraordinary, not just for technology companies, but for any company that owns or controls goods and equipment.

But the court's ruling plainly treats a computer server (and the space it occupies) as a "place" for purposes of the venue statute. As the court put it: "The '*place'* is specifically localized: a physical server *occupying a physical space*." Appx21 (emphases added).[2] To support this conclusion the district court relied on the agreement between Google and an internet service provider (ISP) called Suddenlink. It reasoned that Google owned the servers, and the contract required

[2] As discussed below, this reasoning could just as easily be applied to many other "things." A company that rents office furniture might well find itself facing venue wherever that furniture is located. The furniture would take up space (and therefore be a "place" under the district court's approach); the lessor would both own and control the furniture (including the right to prevent it from being moved to another location without permission); and the lessor would place the furniture in that location to carry out its business.

Suddenlink to provide various services and to seek Google's permission before taking various actions with the server. Appx22. This meant, according to the court, that Google's relationship with Suddenlink was "not a mere lease of digital space or computing power; it is the installation of Google's own servers *in a physical space that becomes Google's*." *Id*. (emphasis altered).

This analysis was flawed in critical respects.

*First*, it was flawed as a textual matter. As this Court noted in striking down a different, but equally expansive, decision from this district court, the venue "analysis must be closely tied to the language of the statute." *Cray*, 871 F.3d at 1362; *see also BigCommerce*, 890 F.3d at 985 ("We cannot ignore the requirements of the statute merely because different requirements may be more suitable for a more modern business environment."). And § 1400(b) is plain: The defendant must have a "place of business" in the district, not merely a thing.

Those two terms aren't the same, as the very dictionaries relied on in *Cray* make clear. "Place" means "'[a] building or a part of a building set apart for any purpose' or 'quarters of any kind.'" *Cray*, 871 F.3d at 1362 (quoting William Dwight Whitney, The Century Dictionary 4520

(Benjamin E. Smith ed., 1911)). Conversely, a "thing" is "any object, substance, attribute, idea." The Century Dictionary, *supra*, at 6291.[3] The two concepts are different, and they should not be given the same meaning.

If Congress meant to make patent venue turn on the presence of objects within the judicial district, it knew how to do so. *See Dep't of Homeland Sec. v. MacLean*, 135 S. Ct. 913, 920-21 (2015) (Congress's use of clear language in one statute suggests it did not intend to convey the same meaning through "obscure" language in another). In fact, Congress did focus on objects in the general civil venue provision, where it authorized suit to be brought where "a substantial part of [the] *property* that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2) (emphasis added). Unlike "place," the ordinary meaning of "property" does include objects, *see, e.g.,* The Century Dictionary, *supra*, at 4777 ("chattels and land"); Black's Law Dictionary 1216 (6th ed.

---

[3] Notably, only one of the 13 dictionaries consulted by the district court even mentions "object" as part of the definition of "place." And all it says is that "the word [place] is associated with objects which are, in their nature, *fixed and territorial*." Appx4 n.5 (emphasis added). Nothing about this or any of the other definitions supports the court's conclusion that objects *are* places because they exist in physical space.

1990) ("lands or tenements, goods or chattels"), and courts have interpreted § 1391 accordingly. *E.g.*, *Rimkus Consulting Grp., Inc. v. Balentine*, 693 F. Supp. 2d 681, 689-90 (S.D. Tex. 2010); *Power Paragon, Inc. v. Precision Tech. USA, Inc.*, 605 F. Supp. 2d 722, 727 (E.D. Va. 2008). The implication is plain: Congress used different language in § 1400(b) because it meant something different.

By treating "place" in § 1400(b) like "property" in § 1391(b), the district court violated this Court's admonition "not to conflate showings that may be sufficient for other purposes, e.g., … the general venue statute, with the necessary showing to establish proper venue in patent cases." *Cray*, 871 F.3d at 1361. Congress created a "special venue statute" to address the particular "abuses engendered" by opportunistic plaintiffs in patent infringement suits. *Id.* (quoting *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 262 (1961)). The result, § 1400(b), is a "standalone venue statute" that is "complete, independent, and controlling in its sphere." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017) (quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228 (1957)). Asserting that the

"place" requirement in § 1400(b) can be satisfied by the presence of property in the district is at odds with this purpose.

*Second*, the court's approach is not faithful to this Court's prior decisions. *Cray* held that the district court "erred as a matter of law in holding that 'a fixed physical location in the district is not a prerequisite to proper venue.'" 871 F.3d at 1362. Instead, it explained, "place" means "a building," "quarters," or other "geographical location." *Id.* And so, even if a thing ever could be a "place," the thing here isn't "a fixed physical location." Indeed, a server can be a box as small as a DVR, and servers can be and commonly are moved. And a server plainly is not a "location": As a physical object, the server is *at* a location, but it is not the location itself.

The district court's approach is similarly unfaithful to *In re Cordis Corp.*, 769 F.2d 733 (Fed. Cir. 1985). *Cordis* found that sales representatives' home offices established a corporation's "place of business" because, among other reasons, the representatives "continually maintain a stock of its products within the district." *Id.* at 737. The presence of continuous inventory, along with other factors, including the defendant's employment of a secretarial and answering

service located in the district, helped to show that the *home offices* established a "place of business" for the defendant. But the Court never even contemplated that the space occupied by the inventory itself might constitute a "place of business." This demonstrates just how far the district court's approach diverges from what this Court has countenanced.

## II. The Uncertainty Caused By The District Court's Decision Is An Especially Strong Justification For Mandamus.

As Google has explained (Pet. 30), mandamus is appropriate to "correct legal error," *In re Roche Molecular Sys., Inc.*, 516 F.3d 1003, 1007 (Fed. Cir. 2008)—which this misinterpretation of the statute plainly is. *See Chandris, Inc. v. Latsis*, 515 U.S. 347, 369 (1995) (interpretation of statutory terms is a question of law). But mandamus is equally appropriate for a reason that is of particular concern to amici: the uncertainty that has been created by the division of authority within the Eastern District of Texas, and that is bound to be created by the district court's rule itself.

This Court has long held it appropriate to grant mandamus relief "where doing so is important to 'proper judicial administration.'" *In re Micron Tech., Inc.*, 875 F.3d 1091, 1095 (Fed. Cir. 2017) (quoting *La*

*Buy v. Howes Leather Co.*, 352 U.S. 249, 259-60 (1957)). Similarly, "mandamus can be an appropriate means for [an] appellate court to correct a district court's answers to 'basic, undecided' legal questions" that risk "considerable litigation producing disparate results." *Micron*, 875 F.3d at 1095 (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964)); *see also, e.g.*, *BigCommerce*, 890 F.3d at 981 (mandamus can "'further supervisory or instructional goals where issues are unsettled and important'").

This supervisory function is especially important with regard to questions about where a suit may be brought. As the Supreme Court has explained in the closely related context of jurisdiction, "[c]larity is to be desired in any statute, but in matters of jurisdiction it is especially important. Otherwise the courts and the parties must expend great energy, not on the merits of dispute settlement, but on simply deciding whether a court has the power to hear a case." *United States v. Sisson*, 399 U.S. 267, 307 (1970). Venue presents similar considerations, which is why courts have issued writs of mandamus, not just "'to confine [the district court] to a lawful exercise of its prescribed jurisdiction,'" but to provide clarity about the proper meaning of the patent-venue statute.

*Micron*, 875 F.3d at 1095 (quoting *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004)); *see also id.* at 1096; *BigCommerce*, 890 F.3d at 981; *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1011 (Fed. Cir. 2018); *Cray*, 871 F.3d at 1359-60. Here, mandamus is appropriate because the district court's decision gives rise to just the sort of uncertainty that, as this Court has recognized, generates unnecessary expense in addressing issues collateral to the merits of a case.

*First*, the decision below created a conflict of authority within the Eastern District of Texas about the proper meaning of § 1400(b). The conflict is express: Judge Gilstrap in the order at issue here expressly "disagrees with th[e] conclusion" reached by Judge Clark in *Personal Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922 (E.D. Tex. 2017). Appx19. In *Personal Audio*, just like here, the court considered whether the same objects (GGC servers) owned by the same defendant (Google) could give rise to jurisdiction in the same district (the Eastern District of Texas). And that court reached the exact opposite conclusion from this one: that Google's "servers are not 'places' under the meaning of the statute and therefore cannot establish a regular and established place

of business in this district." *Personal Audio*, 280 F. Supp. 3d at 934; *see also id.* (a server is "not a building or physical quarter[] of any kind").

There could be no clearer example of a situation threatening to create "considerable litigation producing disparate results." *Micron*, 875 F.3d at 1095. This gross inconsistency is flatly at odds with the imperative that there be "uniform national rule[s] to address the propriety of patent-specific venue." *ZTE*, 890 F.3d at 1013; *see Cray*, 871 F.3d at 1359 (noting the "need for greater uniformity" in the patent-venue statute's interpretation). Particularly given the volume of patent litigation in the Eastern District of Texas, this uncertainty—and the litigation it will engender—should not be allowed to linger.

*Second*, if this decision is permitted to stand, it will give rise to great uncertainty because its scope is so unclear. If a thing can be a place, then enterprising plaintiffs will make the same argument accepted here about all manner of objects. What other objects will give rise to venue? Will it matter if the equipment is owned or leased or held on consignment? Itinerant or fixed? Will it matter if the equipment hosts content, transmits content, or instead is mechanical in nature? Will the decision apply equally to inventory—or is the space occupied by

those objects (e.g., shelf space in a grocery store) somehow different? It is common for suppliers to enter into contracts with retailers which specify where and how the supplier's goods will be displayed. Will a contract specifying that a supplier's product will be displayed on a particular shelf be sufficient to establish patent venue over the supplier? As Judge Clark recognized in *Personal Audio*:

> To conclude that Google's business was being carried out by these servers would have far-reaching consequences that distort the scope of the statute; for example, every single AT&T tower would then possibly become a place of business for AT&T. Maybe even every handheld device sold by Verizon would become a place of business for Verizon because the end-user signed an agreement with Verizon regarding Verizon's exclusive control of the device.

280 F. Supp. 3d at 934.

The rule announced by the district court would also create market-distorting incentives. The amici who have signed this brief are diverse, and they have a wide variety of commercial relationships with other entities that provide networking equipment and services. The district court's rule creates incentives to alter these relationships in ways having nothing to do with their economic purpose merely in order to avoid being subjected to venue in far-flung districts. For example, the decision would appear to distinguish (for venue purposes) between a

company that provides a pre-configured computer to an ISP within the district, and one that provides software which the ISP must download and install onto its own machine. *See* Appx21-24. Companies should not be pushed into particular contractual arrangements—and into abandoning the arrangements they already have—just to avoid the high cost of litigating in venues where they have no "place of business" within any ordinary understanding of the term.

That is especially true when, as here, the problem can be avoided by giving "place" its plain meaning, as this Court previously has done in defining the term as "'[a] building or a part of a building set apart for any purpose' or 'quarters of any kind.'" *Cray*, 871 F.3d at 1362 (quoting The Century Dictionary, *supra*, at 732); *id.* (a "place" can encompass "a 'locality, limited by boundaries'" (quoting Black's Law Dictionary (1st ed. 1891)). The district court's expansionist approach upends the certainty the word's plain meaning otherwise provides, and this Court should therefore reject that approach. *Cf. SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018) ("Where a statute's language carries a plain meaning, the duty of an administrative agency is to follow its

commands as written, not to supplant those commands with others it may prefer.”).

## CONCLUSION

For the foregoing reasons, and those set forth in the Petition, the Court should issue a writ of mandamus directing the district court to dismiss or transfer the case for lack of proper venue.

August 27, 2018

Respectfully submitted,

*/s/Clement Roberts*

Clement Roberts
Cynthia B. Stein
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
(415) 773-5700

Mark S. Davies
Eric A. Shumsky
Robbie Manhas
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on August 27, 2018.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/Clement Roberts*
Clement Roberts
*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a) and Fed. R. App. P. 29(a)(5), because this brief contains 3181 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Clement Roberts*
Clement Roberts
*Counsel for Amici Curiae*