**No. 18-152**

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

IN RE GOOGLE LLC,

*Petitioner.*

On Petition for Writ of Mandamus to the United States District Court
for the Eastern District of Texas,
No. 2:17-cv-00442, Hon. Rodney Gilstrap

# BRIEF FOR INTEL CORPORATION AS AMICUS CURIAE IN SUPPORT OF PETITIONER

GREGORY S. AROVAS
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

ADAM R. ALPER
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104

PAUL D. CLEMENT
*Counsel of Record*
GEORGE W. HICKS, JR.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
(202) 879-5000
paul.clement@kirkland.com

MICHAEL W. DE VRIES
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400

*Counsel for Intel Corporation*

September 11, 2018

## CERTIFICATE OF INTEREST

Counsel for Intel Corporation hereby certifies as follows:

1. The full name of every party represented by me is: **Intel Corporation**.

2. The real party in interest is: **Intel Corporation**.

3. Pursuant to Federal Rule of Appellate Procedure 26.1(a), Intel Corporation does not have a parent corporation, and no publicly held corporation owns more than ten percent of its stock.

4. The names of all law firms and the partners or associates that appeared for the *amicus* now represented by me in the trial court or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

Kirkland & Ellis LLP: Paul D. Clement, Gregory S. Arovas, Adam R. Alper, Michael W. De Vries, Sarah Piepmeier, George W. Hicks, Jr., Christopher M. Lawless, Subash S. Iyer. Potter Minton, PC: Michael E. Jones, Patrick C. Clutter IV.

5. Pursuant to Federal Circuit Rule 47.4(a)(5) and 47.5(b), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending case are: *Godo Kaisha IP Bridge 1 v. Intel Corp.*, No. 17-cv-676 (E.D. Tex.).

Dated: September 10, 2018

s/Paul D. Clement
PAUL D. CLEMENT
*Counsel of Record*
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
(202) 879-5000
paul.clement@kirkland.com

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........ i

TABLE OF AUTHORITIES ........ iv

STATEMENT OF RELATED CASES ........ vi

STATEMENT OF INTEREST ........ 1

SUMMARY OF ARGUMENT ........ 6

ARGUMENT ........ 8

I. Mandamus Is Warranted Because The District Court Misconstrued This Court's Precedents On What Constitutes A "Regular And Established" Place of Business ........ 8

II. Mandamus Is Warranted Because The District Court Failed To Require A Nexus Between Any Regular And Established Place Of Business And Alleged Acts Of Infringement ........ 13

CONCLUSION ........ 17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Bristol-Myers Squibb v. Super. Court of Cal.*,
137 S. Ct. 1773 (2017)........................................................................ 14, 15

*Godo Kaisha IP Bridge 1 v. Intel Corp.*,
No. 17-cv-676 (E.D. Tex. 2017) ........................................................................4

*In re BigCommerce, Inc.*,
890 F.3d 978 (Fed. Cir. 2018)..........................................................................2

*In re Cordis Corp.*,
769 F.2d 733 (Fed. Cir. 1985)...................................................................... 13, 14

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017)................................................................ *passim*

*Jeffrey Galion, Inc. v. Joy Mfg. Co.*,
323 F. Supp. 261 (N.D. W. Va. 1971) ..............................................................15

*Phillips v. Baker*,
121 F.2d 752 (9th Cir. 1941)...........................................................................9

*Scaramucci v. FMC Corp.*,
258 F. Supp. 598 (W.D. Okla. 1966) ..............................................................15

*Schnell v. Peter Eckrich & Sons, Inc.*,
365 U.S. 260 (1961)........................................................................................3, 10

*Stonite Prods. Co. v. Melvin Lloyd Co.*,
315 U.S. 561 (1942)........................................................................................10

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
137 S. Ct. 1514 (2017).......................................................................................2

*Univ. of Ill. Found. v. Channel Master*,
382 F.2d 514 (7th Cir. 1967)...........................................................................13

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
917 F.2d 1574 (Fed. Cir. 1990)..........................................................................2

**Other Authorities**

29 Cong. Rec. 1900 (1897) (statement of Rep. Lacey) ..........................................10

Brief of Intel Corp. and Dell Inc. as *Amici Curiae*,
*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
No. 16-341 (U.S. Feb. 6, 2017) ..........................................................2, 3

Establish, Black's Law Dictionary (1st ed. 1891) ....................................................9

Matthew Bultman, *Beyond Gilstrap: 5 Judges to Watch in Patent Litigation*, Law360 (Feb. 7, 2018), https://bit.ly/2QdseH2 .................................3

*Godo Kaisha IP Bridge 1 v. Intel Corp.*,
No. 17-cv-676 (E.D. Tex. 2017), ECF No. 21 ............................................... 4, 5

*Godo Kaisha IP Bridge 1 v. Intel Corp.*,
No. 17-cv-676 (E.D. Tex. 2017), ECF No. 62 ................................................... 5

*Godo Kaisha IP Bridge 1 v. Intel Corp.*,
No. 17-cv-676 (E.D. Tex. 2017), ECF No. 131 ....................................... 5, 6, 16

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.4(a)(5) and 47.5(b), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending case are: *Godo Kaisha IP Bridge 1 v. Intel Corp.*, No. 17-cv-676 (E.D. Tex.).

## STATEMENT OF INTEREST[1]

Intel is the world's leading manufacturer of computer processors and is a leading manufacturer of hardware and software products for networking, telecommunications, cloud computing, and other applications. Intel's processors power many of the world's computers, from everyday desktops and laptops to the servers that form the backbone of the modern digital economy. Intel owns over 32,000 U.S. patents and was the number three company obtaining U.S. patents listed in IPO's 2017 Top Patent Owner's report (which reported that Intel obtained 3,726 U.S. patents in 2017).

While Intel has defended its innovations as a patent-litigation plaintiff in the past, over the last fifteen years, Intel's experience—like that of many technology companies—has overwhelmingly been as a defendant in suits brought by increasingly sophisticated non-practicing entities pursuing litigation as a portfolio investment strategy. Incorporated in Delaware and headquartered in Northern California, with major manufacturing facilities in Oregon and Arizona, Intel has long litigated infringement suits in its home districts. After *VE Holding Corp. v. Johnson*

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amicus curiae* states that no counsel for any party authored this brief in whole or in part, and no entity or person, aside from *amicus curiae* and its counsel, made any monetary contribution toward the brief's preparation or submission. Pursuant to Federal Rule 29(a) and Federal Circuit Rule 29(c), no motion for leave to file accompanies this *amicus* brief because all parties consent to its filing.

*Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990), however, Intel began to face a disproportionate number of patent suits in judicial districts with no connection to Intel beyond the bare fact that Intel products were available for purchase there simply by virtue of being incorporated in other companies' products or through third-party retailers.

In May 2017, the Supreme Court rejected that permissive approach to venue. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017). The Court declined to follow *VE Holding*, restoring the narrower patent venue provisions contained in 28 U.S.C. §1400(b). *Id.* In *TC Heartland,* Intel and Dell Inc. jointly filed a brief as *amici curiae* in support of TC Heartland, underscoring Intel's longstanding interest in these issues. *See* Brief of Intel Corp. and Dell Inc. as *Amici Curiae* (Intel-Dell.*TC*.Amicus), No. 16-341 (U.S. Feb. 6, 2017).

In the wake of *TC Heartland*, a number of courts, including those in the Eastern District of Texas, have continued to test the maximum permissible breadth of the patent venue statute, including through expansive interpretations of that statute. *See, e.g.*, *In re BigCommerce, Inc.*, 890 F.3d 978, 981, 986 (Fed. Cir. 2018) (granting mandamus petition and determining that Eastern District of Texas erred in concluding that a corporation can "reside" in more than one district in a state under §1400(b)); *In re Cray Inc.*, 871 F.3d 1355, 1356-57 (Fed. Cir. 2017) (granting

mandamus petition because Eastern District of Texas misinterpreted §1400(b)'s scope). In the two years before *TC Heartland*, Intel had been sued for infringement in the Eastern District of Texas eleven times. Intel-Dell.*TC*.*Amicus*.3. Indeed, due to the proliferation of plaintiffs' forum shopping in patent litigation cases preceding *TC Heartland*, an inordinate percentage of all U.S. patent cases are pending before the same judge in the Eastern District of Texas, the presiding judge in this case. *See* Matthew Bultman, *Beyond Gilstrap: 5 Judges to Watch in Patent Litigation*, Law360 (Feb. 7, 2018), https://bit.ly/2QdseH2.

Of primary concern to Intel is the undue strain that plaintiffs' decisions to overcrowd one district (and individual judges) place on the court's ability to afford adequate due process to each case before it. This type of venue shopping is a modern form of the "abuses" Congress intended to stamp out by enacting the patent venue statute. *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 262 (1961). *TC Heartland* was supposed to put a stop to those abuses, but subsequent district court decisions have continued to expansively interpret §1400(b). In this case, for example, the district court's expansive interpretation would allow venue to be had against many corporations in a large number of the nation's 94 judicial districts in which they are not meaningfully operating.

Intel's own recent experience reveals the perils of an overbroad reading of §1400(b) and underscores Intel's interest in Google's petition. In September 2017,

Godo Kaisha IP Bridge 1 (IP Bridge) sued Intel in the Eastern District of Texas for alleged patent infringement. *Godo Kaisha IP Bridge 1 v. Intel Corp.* (*IP Bridge*), No. 17-cv-676 (E.D. Tex.). IP Bridge is a Tokyo-based IP fund sponsored by the Japanese government with no operations, offices, or employees in Texas. *See IP*.ECF.21 at 1.[2] Intel neither is incorporated in Texas nor has a "regular and established place of business" in the District. *Id.* Despite this lack of connection to its chosen venue, IP Bridge nevertheless asserted venue was proper because Intel allegedly has two places of business in the District—one in Plano, another in Richardson. *Id.*

In December 2017, Intel moved to dismiss for lack of venue, arguing that neither "place" renders venue in the District proper. *Id.* at 2. As Intel explained, the Plano site is not Intel's at all. *Id.* at 1. It is McAfee's, a separate company Intel divested in April 2017, six months *before* IP Bridge filed suit. *Id.* And the now-closed Richardson site is a former Altera sales office that Intel inherited upon acquiring that company in December 2015. *Id.* That office is not "regular and established," as Intel never determined to make the Altera sales office a permanent Intel site following the acquisition, and, before IP Bridge's suit, Intel had begun the process of consolidating that office and its 11 employees (out of Intel's

[2] "*IP*.ECF" refers to the electronic docket entry in the *IP Bridge* case.

approximately 100,000 employees) into a larger, longstanding facility in Dallas, Texas, outside the Eastern District. *Id.* That consolidation was completed in December 2017. *See IP*.ECF.62 at 3. Neither site that IP Bridge invoked to establish venue, therefore, is a "regular and established place of business" in the Eastern District of Texas. Moreover, neither in its papers nor at oral argument did IP Bridge assert or establish *any* connection between activities occurring at these sites and its infringement allegations against Intel.

On August 29, 2018, however, the magistrate judge in *IP Bridge* issued a report and recommendation denying Intel's motion to dismiss. *IP*.ECF.131. While acknowledging that Intel had "never intended the Richardson office to be a permanent location after it acquired Altera," the magistrate judge nevertheless concluded that the Richardson office was a "longstanding physical location" in the district, from which Intel "carried out its regular business of product sales." *Id.* at 6. And although this Court has stated that the venue inquiry must focus on whether the location in question is "fix[ed] permanently," *Cray*, 871 F.3d at 1363, the magistrate did not give appropriate legal effect to the fact that the Richardson site was slated for closure before the litigation was initiated and was in fact fully closed a mere three months after IP Bridge filed suit. Instead of recognizing that pre-suit plans for closing a facility within months of a suit are wholly inconsistent with a "fix[ed]" or "permanent" location, the magistrate concluded that the patent venue statute "does

not require indefinite permanency," *IP*.ECF.131 at 6, an amorphous standard Intel never proposed.[3]

Intel is interested in Google's petition because a favorable outcome for Google on the first or second questions presented would likely require the *IP Bridge* district court to overrule the magistrate's recommendation and grant Intel's motion to dismiss for lack of venue. If a place of business must be owned or leased by the defendant, and must be "fixed permanently," to qualify as a "regular and established place of business" under the patent venue statute, neither McAfee's Plano nor Altera's Richardson site can qualify. In addition, if there must be a nexus between the infringing activities and the "regular and established place of business" in a particular forum, the Eastern District of Texas is not a proper venue for the lawsuit against Intel because no district site is alleged to relate in any way to the alleged infringement—as even the magistrate found. *See IP*.ECF.131 at 17-18 ("Godo Kaisha has not established any particular connection to this District").

**SUMMARY OF ARGUMENT**

The district court in the instant appeal made two significant legal errors in interpreting the patent venue statute. These errors affect not only this case but Intel's *IP Bridge* case and countless others, and they are likely to be repeated in the absence

[3] The magistrate did not address whether McAfee's Plano site is a "regular and established place of business." Intel will file objections to the report and recommendation on September 12, 2018.

of the Court's guidance. Accordingly, Intel respectfully asks this Court to grant Google's mandamus petition and vacate the district court's judgment.

First, the district court misconstrued §1400(b)'s requirement that a place of business be "regular and established." As this Court has stressed, an "established" place of business must be "settle[d] certainly, or fix[ed] permanently.'" *Cray*, 871 F.3d at 1363. A location can be neither settled certainly nor fixed permanently if, as in this case, it can be readily moved for any or no reason. Nor can a location satisfy *Cray*'s stringent standard if, as in *IP Bridge*, a defendant has documented, concrete plans before suit is filed to shut down the location in mere months and subsequently executes that plan. By stretching the meaning of "fix[ed]" and "permanent[]" beyond recognition, the district court flouted both the plain meaning of §1400(b) and this Court's precedents.

Second, the district court in the instant appeal erred by requiring no connection between a defendant's alleged acts of infringement and its in-district place of business on which venue is predicated. This Court's precedents indicate the importance of that nexus to the venue inquiry. Furthermore, the Court has made crystal clear that "the regular and established place of business standard requires more than the minimum contacts necessary for establishing personal jurisdiction," *Cray*, 871 F.3d at 1361. Because specific personal jurisdiction requires minimum contacts with a forum *related to the actions giving rise to a suit*, it follows that, at a

bare minimum, there must be *some* connection between a defendant's allegedly-infringing acts and the place of business for venue purposes. In both this case and *IP Bridge*, that proper requirement defeats plaintiffs' chosen venue. Absent this proper requirement, Intel has been forced to litigate a matter set for trial in February 2019 in a forum distant from its operations and unconnected to any alleged acts of infringement. This newly enshrined gap between personal jurisdiction and venue in patent cases is antithetical to precedent and sound policy and cannot stand.

## ARGUMENT

### I. Mandamus Is Warranted Because The District Court Misconstrued This Court's Precedents On What Constitutes A "Regular And Established" Place of Business.

The district court's decision contravenes this Court's September 2017 decision in *Cray*, which required a "regular and established" place of business to be "fix[ed] permanently," 871 F.3d at 1362-63. It follows directly from *Cray* that a place of business cannot be "regular and established" if it is not a location owned or leased by the defendant, as is true with the servers at issue in this case. And it is equally true that a place of business is not "permanently" "fix[ed]" if it is on the verge of being shut down (as is true for Altera's Richardson site), much less if it has already been shut down or transferred to a third party before suit (McAfee's Plano site).

In *Cray*, the Federal Circuit granted mandamus, vacating Judge Gilstrap's denial of a venue transfer request from defendant Cray, a Washington State-based corporation that did not rent or own an office or other property in the Eastern District of Texas. 871 F.3d at 1357-58, 1366-67. Judge Gilstrap had found that venue was proper based on the presence of two Cray employees who teleworked from their homes located in the district. *Id.* at 1357-58. This Court, however, rejected Judge Gilstrap's analysis, and in the process identified three requirements for finding that a defendant maintains "a regular and established place of business" under §1400(b): "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *Id.* at 1360.

This Court then elaborated on the meaning of "established." *Id.* at 1363. That word, the Court explained, "contains the root 'stable,' indicating that the place of business is not transient." *Id.* The term "directs that the place in question must be 'settle[d] certainly, or fix[ed] permanently.'" *Id.* (quoting Establish, Black's Law Dictionary (1st ed. 1891)). The Court also cited other decisions that "have stressed the importance of sufficient permanence." *Id.* (citing, *e.g.*, *Phillips v. Baker*, 121 F.2d 752, 756 (9th Cir. 1941)).

*Cray* concluded that the requirement of permanence "clearly accords with the 'main purpose' identified in the predecessor statute's legislative history." *Id.*

(quoting 29 Cong. Rec. 1900 (1897) (statement of Rep. Lacey)). That "main purpose," the Court explained, was to create proper venue not only in judicial districts in which a defendant was incorporated, but also "where a *permanent* agency transacting the business is located." *Id.* at 1361 (emphasis added) (quoting 29 Cong. Rec. at 1900). Congress, the Court continued, enacted §1400(b)'s predecessor against the backdrop of a previous more liberal rule that extended venue to any location in which a defendant could be served. *Id.* Accordingly, the legislation "was a restrictive measure, limiting a prior, broader venue." *Id.* (quoting *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 566 (1942)). *Cray* then added that the Supreme Court has "instructed that '[t]he requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interests of some overriding policy, is to be given a liberal construction.'" *Id.* (quoting *Schnell*, 365 U.S. at 264).

The Federal Circuit warned that "[c]ourts should be mindful of this history in applying the statute and be careful not to conflate showings that may be sufficient for other purposes, *e.g.*, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases." *Id.* Specifically, as relevant to the interpretation of the phrase "regular and established," the Court contrasted the patent venue standard with the lower "doing business standard of the general venue provision." *Id.*

Despite this Court's warnings, Judge Gilstrap in this case and the magistrate judge in *IP Bridge* adopted an unduly expansive interpretation of "regular and established" that strains beyond recognition the "fix[ed] permanen[ce]" that is central to patent venue. In this case, the ISPs that host the servers in question are far from "fix[ed] permanently," *id.* at 1363. As Google argues, its contract permits the ISPs to move the servers to different locations without terminating the agreement, Appx139, and the contract also can be terminated "at any time" for the "convenience" of either party, Appx138. Such temporary contacts are neither permanent nor fixed and therefore should not support jurisdiction under §1400(b).[4]

The same holds true for Altera's Richardson and McAfee's Plano sites alleged to support venue as to Intel in *IP Bridge*. There is no doubt that McAfee's Plano site was in fact not even Intel's, much less a permanently fixed Intel place of business, when the complaint was filed. And far from being "fix[ed] permanently," Altera's Richardson site was in the process of being *shut down* when IP Bridge filed its lawsuit. A site demonstrably shown to be three months away from closure when a lawsuit is filed is simply not "permanent" under any accepted meaning of the term. As the evidence in *IP Bridge* showed, personnel at the site had been informed of the

[4] Intel is further concerned that the district court's broad interpretation of "place of business" could result in defendants like Intel being forced to defend suit in any jurisdiction containing their equipment, even if they do not operate, own, or lease the physical location where that equipment sits.

imminent closure and concrete steps had been taken to effectuate the closure before suit was filed, and the closure in fact ultimately took place.[5] Accordingly, mandamus guidance from this Court would be key in instructing district courts that they should not disregard *Cray* and conclude in such instances that this kind of site is sufficiently "fix[ed]" and "permanent[]" for purposes of §1400(b).

In short, in both this case and *IP Bridge*, lower courts have adopted overly expansive interpretations of the requirement that a defendant's place of business be "regular and established" to support a finding of venue. Those interpretations render defendants vulnerable to suit even when they do not have a fixed location in a particular jurisdiction, which is contrary to the purpose of the patent venue statute and creates significant uncertainty for defendants. Accordingly, this Court should grant Google's mandamus petition and conclude that a place of business is not "regular and established" unless it is a physical location that is not transitory and in which the defendant has determined to remain.

[5] That the nominal "closing" occurred only (shortly) after suit was filed should not suddenly render venue appropriate. So long as the closing took place in a manner consistent with pre-suit plans of closure, finding venue proper based on the indisputably-closed site undermines the requirement that a defendant maintain a place of business that is "settle[d] certainly or fix[ed] permanently." 871 F.3d at 1363.

## II. Mandamus Is Warranted Because The District Court Failed To Require A Nexus Between Any Regular And Established Place Of Business And Alleged Acts Of Infringement.

The district court in this case also clearly erred by not requiring any connection at all between an alleged act of infringement and a regular and established place of business within a district. In so doing, the district court disregarded two of this Court's precedents, which, taken together, appropriately require a nexus between any alleged act of infringement and the regular and established place of business alleged to be in the judicial district.

First, in *In re Cordis Corp.*, 769 F.2d 733 (Fed. Cir. 1985), this Court indicated that the connection between a defendant's alleged acts of infringement and its place of business in a district is *central* to the venue inquiry. While the *Cordis* Court determined that mandamus was inappropriate on the facts of that case, it contrasted the case before it with an earlier Seventh Circuit decision that upheld the dismissal for improper venue of a patent infringement suit against a New York manufacturer of television antennas where the facts demonstrated that its sole employee worked from his Illinois home promoting sales of his employer's products. *Id.* at 737 (citing *Univ. of Ill. Found. v. Channel Master*, 382 F.2d 514 (7th Cir. 1967)). This Court explained that venue did not lie in *Channel Master* because "there was no evidence to demonstrate that [the defendant's] activities [within the forum] were carried on *concerning the specific product which was the subject of the infringement action*."

*Id*. (emphasis added). The Court's focus on the connection between the place of business and both the alleged infringing conduct and allegedly infringing product would have been wholly unnecessary if that connection was not part and parcel of the patent venue requirement.

Second, this Court's decision in *Cray* confirms the centrality of the nexus between the alleged infringing activity and the place of business. As it did when interpreting the phrase "regular and established," the Court turned to the patent venue provision's history. *Cray* said in no uncertain terms that "the regular and established place of business standard *requires more* than the minimum contacts necessary for establishing personal jurisdiction." 871 F.3d at 1361 (emphasis added). That is because the patent venue provision was "clearly" intended to "narrow[] jurisdiction relative to the courts that previously allowed patent suits wherever" a plaintiff could establish personal jurisdiction over a defendant. *Id.*

The Supreme Court's personal jurisdiction precedents make clear that specific personal jurisdiction cannot be based on minimum contacts with a forum that are unrelated to the actions giving rise to the suit. *Bristol-Myers Squibb v. Super. Court of Cal.*, 137 S. Ct. 1773, 1780-81 (2017) (if there is no connection between the contacts and the underlying controversy, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State"). In other words,

for there to be specific personal jurisdiction, "the suit must arise out of or relate to the defendant's contacts with the forum." *Id.* at 1780 (alterations omitted).

Because the patent venue statute "requires more" than the minimum contacts needed for personal jurisdiction, *Cray*, 871 F.3d at 1361, it follows, *a fortiori*, that "the suit must arise out of or relate to the defendant's contacts with the forum" for purposes of §1400(b) as well, *Bristol-Myers*, 137 S. Ct. at 1780 (alterations omitted). Indeed, several district courts adopted this commonsense requirement long before the Federal Circuit did. In *Scaramucci v. FMC Corp.*, 258 F. Supp. 598 (W.D. Okla. 1966), for example, the district court concluded that, for venue to lie, "there must be some reasonable or significant relationship between the accused item and any regular and established place of business of the accused in the judicial district." *Id.* at 602; *see also Jeffrey Galion, Inc. v. Joy Mfg. Co.*, 323 F. Supp. 261, 266-67 (N.D. W. Va. 1971) (similar). This Court should explicitly reaffirm what is implicit in *Cordis* and *Cray*—that §1400(b) requires a nexus between the alleged infringing act and the place of business within a forum because the patent venue statute was intended to be more, not less, stringent than the personal jurisdiction standard.

Intel's experience in *IP Bridge* also illustrates the dangers of an overbroad approach to venue that requires no connection between the places of business in a judicial district and the alleged acts of infringement. There, even assuming McAfee's Plano or Altera's Richardson sites could qualify as Intel "regular and

established" places of business, IP Bridge never showed *any* connection between activities occurring at those sites and its allegations of patent infringement. As the magistrate's order finding venue proper acknowledged, the lawsuit concerns "manufacturing techniques used at [Intel's] fabrication facilities in Oregon, Arizona, New Mexico, Ireland, and Israel," and Intel has no fabrication facilities in the District. *IP*.ECF.131 at 2. Indeed, Altera's Richardson facility—the sole facility that the magistrate treated as a "regular and established" place of business—sold only Altera products, which are not the subject of IP Bridge's infringement claims. *Id.* at 2, 6; *see also id.* at 17-18 (concluding that "Godo Kaisha has not established any particular connection to this District").

Allowing a lawsuit to go forward in a forum that has no connection with the underlying conduct undercuts the purposes of the patent venue provision, which work in tandem with principles of personal jurisdiction to narrow, not expand, where companies may be forced to defend infringement suits. Granting mandamus relief in this case will help to restore the required nexus and ensure that a plaintiff cannot misuse the restrictive patent venue provision to impermissibly shop for (and, notably, overload) its preferred forum based on contacts that have nothing to do with its suit.

## CONCLUSION

For the reasons set forth above and in Google's petition, this Court should grant Google's mandamus petition.

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT
*Counsel of Record*
GEORGE W. HICKS, JR.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
(202) 879-5000
paul.clement@kirkland.com

MICHAEL W. DE VRIES
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400

GREGORY S. AROVAS
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

ADAM R. APLER
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104

*Counsel for Intel Corporation*

September 11, 2018

## CERTIFICATE OF COMPLIANCE

1. This Brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 3,897 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b), as determined by the word counting feature of Microsoft Word 2010.

2. This Brief complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because the Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

September 11, 2018

s/Paul D. Clement
Paul D. Clement

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Paul D. Clement
Paul D. Clement