# United States Court of Appeals for the Federal Circuit

---

**IN RE: GOOGLE LLC,**
*Petitioner*

---

2018-152

---

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 2:17-cv-00442-JRG, Judge J. Rodney Gilstrap.

---

**ON PETITION FOR PANEL REHEARING AND REHEARING EN BANC**

---

NEAL KUMAR KATYAL, Hogan Lovells US LLP, Washington, DC, filed a combined petition for panel rehearing and rehearing en banc for petitioner. Also represented by COLLEEN SINZDAK; THOMAS SCHMIDT, New York, NY.

MASSIMO CICCARELLI, Thompson & Knight LLP, Dallas, TX, filed a response to the petition for respondent SEVEN Networks, LLC. Also represented by NATALIE COOLEY, JAMES MICHAEL HEINLEN, BRUCE STEVEN SOSTEK.

---

Before PROST, *Chief Judge*, NEWMAN, LOURIE, DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, HUGHES, and STOLL, *Circuit Judges*.

REYNA, *Circuit Judge*, with whom NEWMAN and LOURIE, *Circuit Judges*, join, dissents from the denial of the petition for rehearing en banc.

PER CURIAM.

**O R D E R**

Petitioner Google LLC filed a combined petition for panel rehearing or rehearing en banc. A response to the petition was invited by the court and filed by respondent SEVEN Networks, LLC. The petition for rehearing was first referred to the panel that decided the mandamus petition, and thereafter the petition for rehearing and response were referred to the circuit judges who are in regular active service. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

The petition for panel rehearing is denied.

The petition for rehearing en banc is denied.

FOR THE COURT

February 5, 2019 — /s/ Peter R. Marksteiner
Date — Peter R. Marksteiner
Clerk of Court

# United States Court of Appeals for the Federal Circuit

---

**In re: GOOGLE LLC,**
*Petitioner*

---

2018-152

---

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 2:17-cv-00442-JRG, Judge J. Rodney Gilstrap.

---

REYNA, *Circuit Judge*, with whom NEWMAN and LOURIE, *Circuit Judges*, join, dissenting from the denial of the petition for rehearing en banc.

The court elects not to decide en banc the question of whether servers or similar equipment in third-party facilities are a *regular and established place of business*, such that venue is proper under 35 U.S.C § 1400(b). The court bases its decision on grounds that the issue it presents does not rise to a level that warrants mandamus review. I dissent because the court's decision causes two adverse results. First, the court sidesteps the precise purpose of mandamus relief, thereby weakening our Writ of Mandamus jurisprudence. Second, we leave unanswered a critical issue that increasingly affects venue in legal actions involving e-commerce.

The question poised before the court is whether Google's servers (shown below in the black box), which have no physical interaction with Google employees or

customers and are installed by third-parties in the facilities of third-party internet service providers ("ISPs") located in the Eastern District of Texas, constitute a regular and established place of business under 35 U.S.C. § 1400(b) and this court's decision in *Cray*. *In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017).



Interior Rack Spaces



Google GGC Servers

Pet. for Reh'g 10 (reproduced and modified).

The court asserts that mandamus is inappropriate because, in the words of the panel majority, "it is not known if the district court's ruling involves the kind of broad and fundamental legal questions relevant to § 1400(b)," and "it would be appropriate to allow the issue to percolate in the district courts so as to more clearly define the importance, scope, and nature of the issue for us to review." *In re Google LLC*, No. 2018-152, 2018 WL 5536478, at *3 (Fed. Cir. Oct. 29, 2018).

In every legal action, venue is an important issue "dominated by due process considerations." *Jack Henry & Assoc. v. Plano Encryption Techs. LLC*, 910 F.3d 1199, 1203 (Fed. Cir. 2018). "[A] refusal to grant a motion for change of venue may constitute a violation of due process." *Brecheen v. Oklahoma*, 485 U.S. 909, 910 (1988). As such, "[t]he requirement of venue is specific and unambiguous; it

is not one of those vague principles which, in the interests of some overriding policy, is to be given a liberal construction." *Cray Inc.*, 871 F.3d at 1361 (quoting *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260 (1961)).

Supreme Court and Federal Circuit jurisprudence approves taking up on mandamus important issues such as the issue in this case. For example, we may decide issues important to "proper judicial administration" on mandamus. *La Buy v. Howes Leather Co.,* 352 U.S. 249, 259–60 (1957). Mandamus may also be appropriate "to further supervisory or instructional goals where issues are unsettled and important." *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1291 (Fed. Cir. 2016). We may also review "basic [and] undecided" legal questions on mandamus. *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964); *Cray*, 871 F.3d at 1358–59. Mandamus may be warranted where the petitioner shows, among other things, that she has a "clear and indisputable" right to its issuance. *Cray*, 871 F.3d at 1358. But as was the case in *Cray*, where there is an unsettled, basic, and *undecided* legal question at issue, the right to issuance of the writ cannot be clear and indisputable. *See id.* at 1358–59.

Mandamus review is part of our bedrock supervisory duty as an appellate court to ensure proper judicial administration. *In re Cement Antitrust Litig.*, 688 F.2d 1297, 1304 (9th Cir. 1982). Given the nature of our exclusive subject-matter jurisdiction over federal questions involving patent law, this court in particular has a vital supervisory and instructional duty to further the goals of uniformity and predictability that are "the cornerstones of a well-functioning patent system" and part of the reason for this court's very existence. *See* Timothy B. Dyk, *Federal Circuit Jurisdiction: Looking Back and Thinking Forward*, 67 AM. U. L. REV. 971, 977 (2018).

With this court's supervisory and instructional duties and goals in mind, we have taken up issues on mandamus

since *TC Heartland* to ensure § 1400(b) is not given an expansive construction. *E.g.*, *In re BigCommerce, Inc.*, 890 F.3d 978, 982 (Fed. Cir. 2018); *Cray*, 871 F.3d at 1359–60. In *Cray*, we took mandamus action to correct the district court's impermissibly expansive construction of § 1400(b) that would have otherwise held that an employee working from home in the district was sufficient to be a "regular and established place of business" of the defendant for proper venue. *Cray*, 871 F.3d at 1361–62. We noted that even though many businesses have moved from a brick-and-mortar model to an increasingly virtual one, in the wake of *TC Heartland,* the focus remains on the unchanged language of the statute. *See id.* at 1359–60.

As we saw in *Cray*, there is again growing uncertainty among district courts and litigants as to the requirements of § 1400(b) when conducting business virtually through servers and similar equipment in the district. Prior to this case, another district court in the Eastern District wrestled with the same issue involving the same defendant yet reached a different and contrary conclusion. *See Personal Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 934 (E.D. Tex. 2017) (rejecting the argument that Google servers in local ISP facilities constituted a regular and established place of business). In *CUPP Cybersecurity, LLC* v. *Symantec Corp.*, another district court, in the Northern District of Texas, faced the identical legal issue in a case with a different defendant—"whether the presence of [defendant's] servers at a data center owned by a third party constitutes a regular and established place of business"—and concluded that they did not. No. 3:18-CV-1554, Dkt. No. 44, at *4–6 (N.D. Tex. Dec. 21, 2018). The district court, citing our denial of mandamus in this case, acknowledged the disagreement among its neighboring courts in the Eastern District of Texas and highlighted this court's silence on the issue: "[t]he Federal Circuit has not yet determined whether the presence of a company's servers in a data center operated by a third party establishes a regular and

established place of business for purposes of venue." *Id.* As to the majority's rationale for finding that mandamus was inappropriate in this case, the district court in *CUPP* observed that there would be "far reaching consequences" of concluding that venue was proper, which would "distort the scope of the statute." *Id.* at *6 (quoting *Personal Audio*, 280 F. Supp. 3d at 934). I agree with this assessment because it recognizes the tension between the statute and the realities of the continued change in the nature of the marketplace and how goods and services are traded.

Other courts have wrestled with cases involving similar equipment installed in facilities of third parties. *See, e.g.*, *Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*, No. 17-CV-1725, 2018 WL 1478047, at *3–4 (S.D.N.Y. Mar. 26, 2018) (rejecting the argument that voice-over-internet protocol routers installed in a third-party's facility constituted a regular and established place of business); *Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*, No. 5:14-CV-2022, 2018 WL 400326, at *9 (N.D. Ohio Jan. 12, 2018) (rejecting the argument that owning and controlling equipment in customer facilities constituted a regular and established place of business). Routers play similar roles to servers in that they handle electronic communication, and it takes little imagination to see how the district court's holding in this case could impact companies that, while conducting business, transmit data over a wide variety of equipment. *See, e.g.*, *Personal Audio*, 280 F. Supp. 3d at 934 (questioning whether cell phone towers could be a regular and established place of business for wireless phone service providers if Google's servers were to qualify).

The same legal issues are relevant to every technology company that, like Google, conducts business over the internet. *Amici* comprising similarly situated technology companies who provide internet infrastructure and services filed briefs in support of the mandamus petition and expressed concern over the impact of this issue on their

business—evidence of this case's importance and broad implications. The bar apparently already views the denial of the petition at the panel stage as a signal that it is safe to file more cases against Google and similar defendants in the same district. At the time of filing of the petition for rehearing, Google had been sued thirteen more times in the same district under the same venue theory since October 29, 2018, the date that we denied the petition for mandamus. Pet. for Reh'g 2–3. That number now stands at *thirty-four*.[1] I count that as trending.

Although the majority denied mandamus on grounds that extraordinary relief was not warranted, it succumbed to the temptation to comment on the merits. *Cf., e.g.*, *In re Verinata Health, Inc.*, No. 2017-109, 2017 WL 1422489, at *2 (Fed. Cir. Mar. 9, 2017) (denying petition without commenting on the merits on the basis that "Petitioners have failed to show why they cannot raise their arguments . . . with an appeal from the district court's final judgment or why that alternative would be inadequate in this case"). The majority noted that the district court focused on "many specific details" of Google's contracts with the ISPs and its "strong control" of the servers, and justified the denial of mandamus, at least in part, on those details. The district court itself noted that merely a virtual space or electronic communication is insufficient, but found that the "place" was "a physical server occupying a physical space" over which Google exercised "exclusive control." *Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 951 (E.D. Tex. 2018).

I agree that possession and control over a *place* are important factors when considering the merits. This, of

---

[1] DOCKET NAVIGATOR, https://compass.docketnavigator.com (last visited, February 1, 2019) (running search for Party: Google; Court: Texas Eastern District; and Case Filing Date: On or after 2018-10-29)

course, counts among the factors that the court should have addressed en banc. That said, exclusive ownership and control over the servers may be insufficient under *Cray*. *See Cray*, 871 F.3d at 1363 ("Relevant considerations include whether the *defendant* owns or leases the *place*, or exercises other attributes of possession or control over the *place*." (emphases added)). It is undisputed that no Google employee has ever visited the places where the servers are installed. Nor do those facilities resemble one of the many Google offices in other venues that would satisfy § 1400(b) under a straightforward application of the statute. *See id.* at 1364 ("A further consideration for this requirement might be the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues.").

The district court's holding in this case can be read as another, possibly even more expansive construction of § 1400(b) than the district court's holding in *Cray*. For many companies, the reasoning of the district court's holding could essentially reestablish nationwide venue, in conflict with *TC Heartland*, by standing for the proposition that owning and controlling computer hardware involved in some aspect of company business (e.g., transmitting data) alone is sufficient.

To what extent does the defendant have to be "present" in the district to be "engaging in business"? *See Peerless Network*, 2018 WL 1478047, at *4 ("[W]hatever 'engaging in business' is, a 'place of business' is the location where some person performs that verb.") Is owning, renting, or leasing real property required to establish a "place"? Is a piece of equipment a "place"? Is a shelf where equipment is installed a "place" where business is conducted? Would we have held differently if the employer in *Cray* exercised "exclusive control" over the equipment in the employee's home office? These questions are before us now. There is

no principled reason to wait for these questions to "percolate" further among district courts.

By the time we eventually decide these questions, it is possible that dozens of cases will proceed through motion practice, discovery, claim construction, or trial before potentially getting thrown out by a reversal of a ruling on a motion to dismiss for improper venue. *See In re Sea Ray Boats, Inc.*, 695 F. App'x 543, 544 (Fed. Cir. 2017) (Newman, J., dissenting) (noting that missing "an opportunity for this court to determine whether the district court's decision was in compliance with the venue requirements revived by *TC Heartland* may have harsh consequences" and collecting cases). Given our established practice of taking up other important and undecided issues of judicial administration on mandamus in the wake of *TC Heartland*, I see no justification for us to sit idly by while uncertainty builds and litigants and courts expend their resources on issues that we could have provided guidance on here. I am confident that my colleagues will eventually appreciate the widespread implications of the issue before us in this case. The question is not if we will take this issue up, but when, and how many judicial and party resources will have been needlessly wasted by the time we do.